Mountain Valley Pipeline, LLC
v. Daniel Guidry and Ashley Stecher Wagner

EXHIBIT 2

To Complaint

United States of Interior, Bureau of Land Management
Record of Decision

U.S. Department of the Interior
Bureau of Land Management

# Record of Decision
# Mountain Valley Pipeline and Equitrans Expansion Project
# Decision to Grant Right-of-Way and Temporary Use Permit



May 2023

BLM Mission

It is the mission of the Bureau of Land Management to sustain health, diversity, and productivity of the public lands for use and enjoyment of present and future generations.

**United States Department of the Interior**
**BUREAU OF LAND MANAGEMENT**

---

**Environmental Impact Statement: FERC/FEIS-0272F (CP16-10-000 and CP16-13-000)**
**Supplemental Environmental Impact Statement: FS/FSEIS 2020**
**Supplemental Environmental Impact Statement: FS/FSEIS 2023**
**Agency Number Case File Numbers: VAES-058143-04 and VAES-058143-05**

# RECORD OF DECISION

**Mountain Valley Pipeline and Equitrans Expansion Project[1]**
**Decision to Grant Right-of-Way and Temporary Use Permit**

**Monroe County, West Virginia**
**Giles and Montgomery Counties, Virginia**

Bureau of Land Management
Eastern States Office, Falls Church, Virginia
5275 Leesburg Pike Falls Church, Virginia 22041

Southeastern States District Office, Flowood, Mississippi
273 Market Street
Flowood, Mississippi 39232

With the Concurrence of:

U.S. Department of Agriculture, George Washington and Jefferson National Forests
5162 Valleypointe Parkway
Roanoke, Virginia 24019

May 17, 2023

[1] The Equitrans Expansion portion of the larger Mountain Valley Pipeline project does not impact National Forest System lands, and therefore this document has no bearing on the Equitrans Expansion Project.

# TABLE of CONTENTS

Record of Decision Executive Summary ........................................................................................ 1
Final Agency Action ........................................................................................................ 4
Eastern States Director's Recommendation.................................................................................. 4
Secretarial Approval.......................................................................................................... 5
Appeal of this Decision...................................................................................................... 6
1 Introduction ..................................................................................................................... 7
1.1 Background and Project Information ............................................................................... 7
1.2 BLM Purpose and Need.................................................................................................. 11
2 Decision .......................................................................................................................... 11
2.1 Project Construction and Operation ................................................................................. 12
2.2 Bonding .......................................................................................................................... 13
2.3 Decommissioning on Federal Lands ................................................................................. 14
2.4 Mitigation Measures ....................................................................................................... 14
2.4.1 Terms, Conditions, and Stipulations .............................................................................. 14
2.5 Compliance Monitoring and Reporting ............................................................................ 17
3 Alternatives Considered ................................................................................................... 17
3.1 FERC FEIS...................................................................................................................... 17
3.1.1 Major Route Alternatives Considered in Detail ............................................................. 18
3.1.1.1 No Action Alternative .................................................................................................. 18
3.1.1.2 Proposed Action Alternative (Environmentally Preferable) ......................................... 18
3.1.1.3 Alternative 1 and Hybrid 1A ....................................................................................... 18
3.1.1.4 Hybrid Alternative 1B .................................................................................................. 18
3.1.1.5 Northern Pipeline–ACP Collocation Alternative ......................................................... 19
3.1.1.6 Route Variations Considered in Detail ........................................................................ 19
3.2 FS 2020 FSEIS................................................................................................................. 19
3.2.1 Alternatives Considered in Detail .................................................................................. 20
3.2.1.1 No Action Alternative .................................................................................................. 20
3.2.1.2 Proposed Action Alternative......................................................................................... 20
3.3 FS 2023 FSEIS................................................................................................................. 20
3.3.1 Alternatives Considered in Detail .................................................................................. 21
3.3.1.1 No Action Alternative .................................................................................................. 21
3.3.1.2 Proposed Action Alternative (Environmentally Preferred Alternative) ............................ 21
4 Management Considerations and Decision Rationale........................................................ 22

4.1. Water Resources ........ 24
4.2 Threatened, Endangered and Sensitive Species ........ 26
4.2.1 Aquatic Species ........ 26
4.2.2 Terrestrial Species ........ 27
5 Public Involvement ........ 29
5.1 FERC EIS ........ 29
5.2 FS 2020 SEIS ........ 30
5.3 FS 2023 SEIS ........ 31
5.4 Cooperating Agencies ........ 31
5.5 Consultation under Section 7 of the Endangered Species Act ........ 32
5.6 Consultation under Section 106 of the National Historic Preservation Act ........ 33
5.7 Government-to-Government Tribal Consultation ........ 33
6 Notification of ROD and Contact Person ........ 34
7 References ........ 35

# ATTACHMENTS

Attachment A: Right of Way Grant and Temporary Use Permit (includes POD, Stipulations)
Attachment B: Forest Service Concurrence Letter
Attachment C: USFWS Biological Opinion
Attachment D: Programmatic Agreement
Attachment E1: FERC Certificate
Attachment E2: FERC Order Partial Approval of Variance Request No. G-16
Attachment F: Migratory Bird Conservation Plan

# ACRONYMS AND ABBREVIATIONS

| | |
|---|---|
| ANST | Appalachian National Scenic Trail |
| AO | Authorized Officer |
| Bcf/d | Billion Cubic Feet Per Day |
| BO | Biological Opinion |
| BLM | U.S. Department of the Interior, Bureau of Land Management |
| BMP | Best Management Practice |
| Certificate | Certificate of Public Convenience and Necessity |
| C.F.R. | Code of Federal Regulations |
| Dth/d | Dekatherms Per Day |
| DSEIS | Draft Supplemental Environmental Impact Statement |
| FEIS | Final Environmental Impact Statement |
| EPA | Environmental Protection Agency |
| EPAct | Energy Policy Act |
| FERC | Federal Energy Regulatory Commission |
| FERC's Order | Certificate of Public Convenience and Necessity |
| FRAP | Federal Rules of Appellate Procedure |
| FS | U.S. Department of Agriculture, Forest Service |
| FSEIS | Final Supplemental Environmental Impact Statement |
| Forest Plan | 2004 Jefferson National Forest Revised Land and Resource Management Plan |
| Fourth Circuit or the Court | United States Court of Appeals for the Fourth Circuit |
| Grant | BLM's Right-of-Way Grant and associated Temporary Use Permit |
| JNF | Jefferson National Forest |
| Mountain Valley | Mountain Valley Pipeline, LLC |
| MLA | Mineral Leasing Act |
| MVP | Mountain Valley Pipeline |
| NAGPRA | Native American Graves Repatriation Act |
| NEPA | National Environmental Policy Act |
| NFMA | National Forest Management Act |
| NFS | National Forest System |
| NGA | Natural Gas Act |
| NHPA | National Historic Preservation Act |
| NOA | Notice of Availability |
| NOI | Notice of Intent |
| NTP | Notice to Proceed |
| PA | Programmatic Agreement |
| POD | Plan of Development |
| RFSS | Regional Forester Sensitive Species |
| ROD | Record of Decision |
| ROW | Right-of-Way |
| RUSLE2 | Revised Universal Soil Loss Equation 2 |
| SEIS | Supplemental Environmental Impact Statement |
| Transcon | Transcon Environmental Inc. |
| TUP | Temporary Use Permit |
| USACE | U.S. Army Corps of Engineers |
| USFWS | U.S. Department of Interior, Fish and Wildlife Service |
| USGS | U.S. Geological Survey |
| VDEQ | Virginia Department of Environmental Quality |

# Record of Decision

## Executive Summary

This Record of Decision (ROD) documents the Department of the Interior's (DOI or Department) decision and rationale for approving a right-of-way (ROW) and temporary use permit (TUP) for the Mountain Valley Pipeline (MVP) project (Project) on federal lands under the jurisdiction of the U.S. Department of Agriculture Forest Service (USDA Forest Service or FS) in Virginia and West Virginia.

Of the total acreage of the MVP route, 1.2 percent (3.5 miles, or 75.25 acres) crosses National Forest System (NFS) lands managed by the FS in Monroe County, West Virginia, and Giles and Montgomery counties, Virginia, within the Jefferson National Forest (JNF). The MVP route also crosses about 60 feet of the Weston and Gauley Bridge Turnpike Trail, in Braxton County, West Virginia, managed by the U.S. Army Corps of Engineers (USACE).

Consistent with the Mineral Leasing Act (MLA) (30 U.S.C. § 185), the Bureau of Land Management (BLM) is responsible for reviewing Mountain Valley Pipeline, LLC's (Mountain Valley) ROW application, considering a decision to grant or deny the ROW and TUP application, and, if the application is approved, issuing a ROW grant across the federal lands involved.

On October 13, 2017, the Federal Energy Regulatory Commission (FERC) issued a Certificate of Public Convenience and Necessity for the entire 303.5-mile interstate natural gas pipeline Project (FERC 2017b). The BLM participated as a cooperating agency, along with the FS and USACE, in the FERC's Final Environmental Impact Statement (FEIS) for the Mountain Valley Project and Equitrans Expansion Project (FERC FEIS; FERC 2017a).

On December 20, 2017, the BLM adopted the FERC FEIS and issued a decision (BLM 2017a) approving Mountain Valley's proposed 3.5-mile ROW and TUP across the JNF and 60-foot ROW and TUP across USACE land[1] after receiving concurrence from both agencies. The ROD included terms and conditions to protect the environment and other requirements consistent with the MLA and BLM's implementing regulations. On December 27, 2017, the BLM and Mountain Valley executed the ROW grant (BLM 2017b).

Project implementation on NFS lands managed by the Jefferson National Forest began in March 2018 and continued until July 27, 2018, when the United States Court of Appeals for the Fourth Circuit (Fourth Circuit or the Court) vacated and remanded the Forest Service's decision approving the Forest Plan amendment, based on violations of the National Forest Management

[1] The BLM's decision to authorize a ROW across the USACE land (BLM 2017a) was not vacated by the United States Court of Appeals for the Fourth Circuit (U.S. Court of Appeals 2018), continues to be a valid ROW (BLM 2017b), and is not implicated by Mountain Valley's amended application considered in this Record of Decision.

Act (NFMA) and the National Environmental Policy Act (NEPA). The Court also vacated and remanded BLM's MLA ROW decision and ROW grant for the portion through NFS lands based on a violation of the MLA, but did not remand the BLM's ROW grant (BLM 2017b) for the portion of the MVP crossing USACE lands.

In response to the Fourth Circuit 2018 decision, the Forest Service completed a Final Supplemental Environmental Impact Statement (FSEIS) in December 2020 (2020 FSEIS; FS 2020), with the BLM's participation as a cooperating agency. On January 11, 2021, the Forest Service issued a ROD (FS 2021) approving an amendment to the Forest Plan. On January 14, 2021, the BLM issued a ROD (BLM 2021a) granting a 30-year pipeline ROW across the JNF. Several environmental organizations immediately challenged both the Forest Service's and BLM's RODs in the Fourth Circuit. On January 25, 2022, the Fourth Circuit again vacated and remanded both the Forest Service's and BLM's RODs. The Fourth Circuit 2022 decision found that the Forest Service and BLM: 1) inadequately considered the actual sedimentation and erosion impacts of the pipeline; 2) prematurely authorized the use of the conventional bore method to construct stream crossings; and 3) the Forest Service failed to comply with the Forest Service's 2012 Planning Rule.

On March 28, 2022, Mountain Valley filed an amended MLA ROW application (DOI 2022) with the BLM. On August 5, 2022, the BLM deemed Mountain Valley's amended application complete. The amended application again seeks a ROW and TUP for the same proposed route across 3.5 miles of NFS lands through the JNF in West Virginia and Virginia.

Following the acceptance of the amended application, the FS, and the BLM as a cooperating agency, prepared the Mountain Valley Pipeline and Equitrans Expansion Project Final Supplemental EIS (2023 FSEIS; FS 2023a) in compliance with NEPA[2] and other relevant Federal and State laws and regulations. The 2023 FSEIS addresses the issues identified by the Fourth Circuit's decision from January 25, 2022 and considers relevant new information and changed circumstances. The 2023 FSEIS supplements the analysis in the FERC FEIS and the 2020 FSEIS.

Based on the FERC FEIS, the 2020 FSEIS and the 2023 FSEIS, the FS issued a ROD on May 15, 2023 to amend the 2004 JNF Land and Resource Management Plan (Forest Plan) (FS 2023b). The FS submitted its concurrence to the BLM for the issuance of the ROW Grant on May 15, 2023 (Attachment B).

The BLM has independently reviewed and adopted the relevant portions of the FERC FEIS and the FERC Boring Environmental Assessment (EA) (FERC 2021), the 2020 FSEIS and the 2023 FSEIS per 40 Code of Federal Regulations (CFR) 1506.3. The BLM has prepared this ROD for project-related actions affecting NFS lands based on information contained in the FERC FEIS, the 2020 FSEIS and the 2023 FSEIS. This decision will specifically affect the NFS lands detailed in the FERC FEIS, Mountain Valley's Plan of Development (POD) (Attachment A,

[2] On April 20, 2022, the Council of Environmental Quality published its final rule amending certain provisions of its regulations for implementing the NEPA (see 87 FR 23453, pages 23453 to 23470) in the *Federal Register* (FR). The effective date for the revised regulations was May 20, 2022. Because this project was initiated in 2017, the Forest Service has elected to continue using the previous NEPA regulations, issued in 1978, as amended in 1986 and 2005.

Exhibit B), and described in the 2023 FSEIS.

After extensive environmental analysis, consideration of agency, Tribal, and public comments, and application of pertinent Federal laws and policies, and in accordance with 43 CFR Part 2880, it is the decision of the BLM to authorize a 30-year ROW and associated TUP for the construction, operation, maintenance, and termination of the Proposed Action alternative as described in the 2023 FSEIS for the MVP Project across NFS lands. The ROW Grant will be for the route certificated by FERC (FERC 2017b), analyzed in the FERC FEIS (FERC 2017a), the 2020 FSEIS (FS 2020), and the 2023 FSEIS (FS 2023a), and detailed in the POD (Attachment A, Exhibit B).

This ROD constitutes the DOI's and BLM's final decision for the MVP Project, including mitigation and monitoring requirements.

# Final Agency Action

## Issuance of Right-of-Way Grant

## Eastern States Director's Recommendation

It is my decision to approve a 42-inch, steel-welded, underground natural gas pipeline Right-of-Way Grant and associated Temporary Use Permit (VAES-058143-04 and VAES-058143-05) to Mountain Valley Pipeline, LLC, subject to terms, conditions, stipulations, and environmental protection measures developed by the Federal Energy Regulatory Commission, U.S. Department of the Interior, Bureau of Land Management and U.S. Fish and Wildlife Service, and U.S. Department of Agriculture Forest Service, and identified in this Record of Decision, including attachments, and the Plan of Development developed by Mountain Valley Pipeline, LLC.

Mitchell Leverette (signature) — 5/15/2023

Mitchell Leverette
State Director, Bureau of Land Management, Eastern States

Date

## Secretarial Approval

I hereby approve the decision of the Eastern States Director. My approval constitutes the final decision of the Department of the Interior. In accordance with 15 U.S.C. § 717r(d)(1), any challenge to this decision must be brought in the United States Court of Appeals for the Fourth Circuit. Additionally, any challenge to this decision is subject to 42 U.S.C. § 4370m-6.

**MAY 17 2023**

Tommy Beaudreau
Deputy Secretary,
Department of the Interior

Date

## Appeal of this Decision

Section 313(b) of the Energy Policy Act of 2005 (EPAct), which amended the National Gas Act (NGA), grants the United States Courts of Appeals original and exclusive jurisdiction to review Federal decisions to issue, condition, or deny a Federal authorization for any facility that will be constructed or operated subject to 15 U.S.C. § 717b or 15 U.S.C. § 717f:

> The United States Court of Appeals for the circuit in which a facility subject to section 717b of this title or section 717f of this title is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a Federal agency (other than the Commission) or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval (hereinafter collectively referred to as "permit") required under Federal law, other than the Coastal Zone Management Act of 1972.

This Decision is an order or action of a Federal agency issuing a permit, as that term is used in the EPAct, 15 U.S.C. § 717r(d)(1), because it is an agency decision to issue and condition a BLM Grant for the use of Federal lands involved in the MVP Project, which is a facility that will be constructed and operated pursuant to 15 U.S.C. § 717f. Accordingly, this Decision is appealable directly to an appropriate United States Court of Appeals in accordance with 15 U.S.C. § 717r and the Federal Rules of Appellate Procedure (FRAP).

FRAP 4(a)(1)(B) states that in cases where the United States or its officer or agency is a party, the notice of appeal "may be filed by any party within 60 days after entry of the judgment or order appealed from." Similarly, the NGA requires that any party aggrieved by a FERC order on rehearing file a notice of appeal with the appropriate United States Court of Appeals within sixty (60) days, 15 U.S.C. § 717r(b). Thus, any notice of appeal of this Decision must be filed in the appropriate United States Court of Appeals within sixty (60) days of the date of this Decision.

# 1 Introduction

This Record of Decision (ROD) documents the Department of the Interior's (DOI or Department) decision and rationale to grant a right-of-way (ROW) and temporary use permit (TUP) to Mountain Valley Pipeline, LLC (Mountain Valley), pursuant to the Mineral Leasing Act (MLA), 30 U.S.C. § 185, and Bureau of Land Management (BLM) regulations implementing the MLA, 43 C.F.R. § 2880, *et seq.*, to cross 3.5 miles of federal land managed by the U.S. Department of Agriculture Forest Service (Forest Service or FS) in Virginia and West Virginia. The ROW grant is in connection with the 303.5-mile long natural gas pipeline, known as the Mountain Valley Pipeline (MVP) Project. On October 13, 2017, the Federal Energy Regulatory Commission (FERC) issued a Certificate of Public Convenience and Necessity for the entire MVP Project (FERC 2017b). While no BLM-administered lands are associated with the Project, the BLM is responsible for considering a ROW and TUP application when lands administered by two or more federal land management agencies are involved, per the MLA. 30 U.S.C. § 185(c)(2).

Consistent with 40 C.F.R. § 1506.3, the Department is adopting, and relying on, the environmental analyses and documentation in the FERC Mountain Valley Project and Equitrans Expansion Project Final Environmental Impact Statement (FEIS) (FERC FEIS; FERC 2017a) and the FERC Boring Environmental Assessment (EA) (FERC 2021), the 2020 Forest Service Final Supplemental Environmental Impact Statement (FSEIS) (2020 FSEIS; FS 2020) and the 2023 Forest Service FSEIS (2023 FSEIS; FS 2023a), pursuant to the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, *et seq.* The Department has conducted an independent review of the FERC FEIS, the 2020 FSEIS and the 2023 FSEIS, and concluded the FERC and the FS addressed the BLM's comments and suggestions. As further documented in this ROD, the Department's decision also conforms to and complies with all applicable environmental laws and regulations, including, but not limited to, the Endangered Species Act, 16 U.S.C. § 1531, *et seq.* and the National Historic Preservation Act, 54 U.S.C. § 306108. The FS also concurs with the Department's issuance of the ROW and TUP under the MLA through 3.5 miles of NFS land managed by the FS, consistent with 43 C.F.R. § 2884.26 (Attachment B).

In reaching this conclusion, the Department defers to the expert opinions of the Federal agencies that administer the lands over which the pipeline will cross and the FERC's and the FS's opinions and roles as lead agencies for NEPA compliance for this complex interstate project. The BLM does not directly manage any land involved in the MVP project. In cases that do not involve land managed by BLM, BLM's analysis of a proposal is based in large part on "the agencies that are impacted from the proposal and their review of the proposal in light of the purposes for which the land they administer is dedicated." *Navajo Refining Co.*, 149 IBLA 14, 21 (1999).

## 1.1 Background and Project Information

In February 2016, Mountain Valley notified the FERC that the MVP would cross Federally owned lands managed separately by both the FS (as part of the Jefferson National Forest, JNF)

and the U.S. Army Corps of Engineers (USACE) (as part of the Weston and Gauley Bridge Turnpike Trail). Under the MLA, 30 U.S.C. § 185 et seq., the BLM is the Federal agency responsible for the issuance of a ROW grant to Mountain Valley for a pipeline easement across federal lands, in this case lands administered by the FS and USACE.

The MVP pipeline route will cross 3.5 miles (75.25 acres or 1.2 percent of the total MVP acreage) of the JNF in Monroe County, West Virginia, and Giles and Montgomery counties, Virginia. The MVP pipeline route crosses about 60 feet of the Weston and Gauley Bridge Turnpike Trail, managed by the USACE, in Braxton County, West Virginia. The FS and USACE must concur with the Department's decision to issue a ROW and TUP across Federal lands.

Mountain Valley's objective for the 303.5-mile MVP Project is to transport natural gas produced in the Appalachian Basin to markets in the Northeast, Mid-Atlantic, and Southeastern United States. The MVP Project is designed to transport about 2.0 million decatherms per day (Dth/d), equivalent to about 2.0 billion cubic feet per day (Bcf/d) of contracted volumes of natural gas. The Equitrans Expansion Project will transport up to 400,000 Dth/d (about 0.4 Bcf/d) of contracted firm capacity of natural gas. A specific description of the MVP Project's purpose and need is found in the FERC FEIS, pages 1- 8.[3]

FERC has authority over the siting, construction, and operation of interstate natural gas pipelines. Under Sections 3 and 7 of the Natural Gas Act of 1938 (NGA), as amended, FERC issues Certificates for natural gas pipelines and authorizes construction and siting of facilities for the import or export of natural gas.

Accordingly, FERC is the Lead Agency for Mountain Valley's application for the MVP Project. On October 13, 2017, FERC issued a Certificate of Public Convenience and Necessity to Mountain Valley for the MVP Project (FERC 2017b), following publication of the Final EIS consistent with NEPA (FERC 2017a). The Certificate authorized Mountain Valley to construct, operate, and maintain:

- 303.5 miles of new underground 42-inch-diameter pipeline extending from the new Mobley Interconnect in Wetzel County, West Virginia, to the existing Transcontinental Gas Pipe Line Company LLC (Transco) Station 165 in Pittsylvania County, Virginia;
- 3 new compressor stations (Bradshaw, Harris, Stallworth) in West Virginia, totaling about 171,600 horsepower;
- 4 new meter and regulation stations and interconnections (Mobley, Sherwood, WB, and Transco);
- 3 new taps (Webster, Roanoke Gas Lafayette, and Roanoke Gas Franklin);
- 8 pig launchers and receivers at 5 locations; and
- 36 mainline block valves.

[3] The Fourth Circuit's vacatur and remand of the FS ROD (FS 2021) and the BLM's MLA ROW decision (BLM 2021a) and the amended application considered in this Record of Decision does not alter the Project's purpose as reflected in the FERC FEIS.

On December 1, 2017, the FS adopted the FERC FEIS and issued a ROD (FS 2017) amending the Jefferson National Forest Revised Land and Resource Management Plan (Forest Plan) to modify certain Forest Plan standards that precluded the use of standard pipeline construction methods for the MVP Project. The ROD included terms and conditions to protect Forest resources, which the FS provided as part of its concurrence of the BLM's approval of a ROW grant to cross the JNF.

The USACE provided the BLM with concurrence to cross its lands on December 17, 2017.

On December 20, 2017, the BLM adopted FERC's FEIS and issued a decision (BLM 2017a) approving Mountain Valley's proposed 3.5-mile ROW and TUP across the JNF and 60-feet ROW and TUP across USACE land.[4] The ROD included terms and conditions to protect the environment and other requirements consistent with the MLA and BLM's implementing regulations. On December 27, 2017, the BLM and Mountain Valley executed the FS ROW grant (BLM 2017b), which included the conditions and requirements reflected in BLM's ROD, and Mountain Valley began the implementation of the Project shortly thereafter.

Several groups filed a lawsuit in the Fourth Circuit challenging the FS's ROD and the BLM's ROD for failing to comply with NEPA, the National Forest Management Act (NFMA), and the MLA. On July 27, 2018, the Fourth Circuit issued a decision rejecting most of the petitioners' NEPA claims, including that the BLM's and FS's reliance on FERC's FEIS, except with respect to sedimentation analysis as noted below (U.S. Court of Appeals 2018). The Fourth Circuit, however, held that the BLM violated the MLA by failing to determine whether the proposed route "utilize[ed] rights-of-way in common . . . to the extent practical" as required by Section 28(p) of the MLA, 30 U.S.C. § 185(p). It also held that the FS violated NEPA by adopting the FERC FEIS because FERC did not resolve issues raised by the FS regarding sedimentation analysis. Further, the Fourth Circuit held that the FS's amendment of the JNF Forest Plan violated NFMA. On these bases, the Fourth Circuit vacated the FS's decision approving the JNF Forest Plan amendment and the BLM's decision approving the MLA ROW across the JNF and remanded the decisions back to the agencies. At that time, Mountain Valley had completed ROW clearing activities on Sinking Creek and Brush Mountains and had felled, but had not removed, the trees on Peters Mountain, nor started trenching and installing pipe.

On May 1, 2020, Mountain Valley submitted a revised MLA ROW application (DOI 2020) to the BLM seeking to construct and operate the natural gas pipeline across the JNF and included a revised plan of development (POD) and several new alternatives. Mountain Valley also requested that the FS amend the Forest Plan consistent with the issues identified by the Court. On May 29, 2020, the BLM deemed Mountain Valley's revised application complete. To address the NEPA and NFMA deficiencies identified by the Fourth Circuit, the FS initiated the

[4] The BLM's decision to authorize a ROW across the USACE land (BLM 2017a) was not vacated by the United States Court of Appeals for the Fourth Circuit (U.S. Court of Appeals 2018b), continues to be a valid ROW (BLM 2017b), and is not implicated by Mountain Valley's amended application considered in this Record of Decision.

process of supplementing the FERC FEIS.

With the BLM serving as a cooperating agency, the FS completed a FSEIS in December 2020 (2020 FSEIS, FS 2020) that considered the July 2018 Fourth Circuit opinion, changes to Mountain Valley's proposed ROW application, and significant new circumstances or information relevant likely to have environmental effects, consistent with 40 C.F.R. § 1502.9(c)(1)(i)-(ii). On January 11, 2021, the Forest Service issued a ROD (FS 2021). On January 14, 2021, the BLM issued a ROD granting a 30-year pipeline ROW in the JNF (BLM 2021a). Several environmental organizations immediately challenged both the Forest Service's and BLM's RODs in the Fourth Circuit. On January 25, 2022, the Fourth Circuit again vacated and remanded both the Forest Service's and BLM's RODs (U.S. Court of Appeals 2022). The Fourth Circuit found that the Forest Service and BLM: 1) inadequately considered the actual sedimentation and erosion impacts of the pipeline; 2) prematurely authorized the use of the conventional bore method to construct stream crossings; and 3) the Forest Service failed to comply with the Forest Service's 2012 Planning Rule.

On March 28, 2022, Mountain Valley filed an amended MLA ROW application (DOI 2022) with the BLM. On August 5, 2022, the BLM deemed Mountain Valley's amended application complete. On December 23, 2022, the Environmental Protection Agency (EPA) published a notice of availability of the Draft SEIS in the Federal Register, starting a 45-day comment period, which was later extended 15 additional days. On April 14, 2023, the EPA published a notice of availability of the Final SEIS in the Federal Register. On May 11, 2023, the FS issued an Errata to the MVP FSEIS, which corrected typographical errors and clarified several statements in the FSEIS. On May 15, 2023, the FS issued their ROD approving the Forest Plan amendment (FS 2023b). The FS subsequently submitted terms and conditions for the BLM to include in a ROW grant/TUP in the FS's concurrence letter for the approval of a ROW grant and TUP to cross 3.5 miles of JNF (Attachment B).

In response to the Fourth Circuit's decision to vacate and remand the BLM's December 20, 2017 ROD and consistent with 30 U.S.C. § 185(p), the BLM analyzed whether co-locating Mountain Valley's proposed ROW with existing rights-of-way on federal lands was practical, which is reflected in the BLM's August 23, 2018 Practicality Analysis and the BLM's September 2, 2020 addendum to the 2018 Analysis for additional route alternatives provided in MVP's revised application of May 1, 2020 (FS 2020, Appendix A). The 2018 Analysis set forth in detail the criteria the BLM utilized to satisfy the directive in 30 U.S.C. § 185(p): (1) the extent of collocation on federal lands, and (2) whether such route alternatives are practical. As noted in the 2018 Analysis, the BLM established how the analysis interpreted the term "practical" because "practical" is not defined in the MLA or the regulations. While the BLM referred to various sources for support in defining the term "practical," the BLM did not adopt any other agency's definition, including the USACE's definition of the term "practicable." The Fourth Circuit decision upheld the BLM's 2018 Practicality Analyses and the BLM's 2020 addendum to the 2018 Analysis (U.S. Court of Appeals 2022). The FS confirmed that no new opportunities for collocation within existing rights-of-way on federal lands have occurred since the Fourth Circuit's 2022 decision. Therefore, the BLM's previous practicality analysis remains valid.

### 1.2 BLM Purpose and Need

The BLM's purpose and need is to respond to Mountain Valley's amended MLA ROW application for the MVP project to construct and operate a natural gas pipeline across NFS lands consistent with the MLA, 30 U.S.C. § 185 and BLM's implementing regulations, 43 CFR Part 2880. Under the MLA, the BLM has responsibility for reviewing Mountain Valley's ROW application and issuing a decision on whether to approve, approve with modifications, or deny the application.

Consistent with 30 U.S.C. §185(p), BLM must require utilization of rights-of-way in common to the extent practical. The BLM's review of the ROW application has focused, in part, on the FS supplemental analyses for NFS lands as well as the FERC FEIS and FERC Boring EA, consistent with the Fourth Circuit's decisions. The BLM participated as a cooperating agency with the FS to complete the necessary environmental analyses to address the issues identified by the Fourth Circuit's 2022 decision.

## 2 Decision

After extensive environmental analysis, consideration of agency, Tribal, and public comments, and application of pertinent Federal laws and policies, and in accordance with 43 C.F.R. Part 2880, it is the decision of the BLM to adopt FERC's 2017 FEIS, FS's 2020 FSEIS and FS's 2023 FSEIS. The BLM will grant ROW VA-ES-058143-04 and the associated TUP VA-ES-058143-05 for the construction, operation, maintenance, and termination of the Proposed Action alternative from the FERC FEIS, 2020 FSEIS, and 2023 FSEIS for the MVP Project across NFS lands. The BLM will incorporate the terms and conditions identified in the FS concurrence letter (Attachment B) as part of the ROW and TUP. BLM's decision also complies with the provision in the MLA, 30 U.S.C. § 185(p), requiring that the ROW be collocated with existing rights-of-way on federal lands to the extent practical.

The Grant will be for the route certified by FERC (FERC 2017b). Specifically, the Department, with concurrence from FS, has decided to:

1. Grant a ROW authorizing the construction, operation, and maintenance of a 42-inch, steel-welded underground natural gas pipeline. On NFS lands, the ROW will be 50-feet wide (including the ground occupied by the pipeline) and 3.5 miles long and will encompass 21.62 acres in Monroe County, West Virginia, and Giles and Montgomery counties in Virginia (See Table 1-1 in Attachment A). The term of the grant is thirty (30) years with the right of renewal. This ROW grant is issued under authority of the MLA, as amended (30 U.S.C. § 185).
2. Issue a TUP in association with the MVP Project ROW authorizing the use of Temporary Workspace outside of the permanent ROW during the construction of the project. The TUP will encompass an area on NFS lands (in addition to the permanent 50-foot ROW). A 75-foot-wide temporary construction ROW encompasses 53.63 acres. The term of the TUP will be approximately 3 years with a right of renewal. This TUP is issued under authority of the MLA, as amended (30 U.S.C. § 185). See

Table 1-1 in Attachment A.

3. In accordance with 43 C.F.R. Part 2800, Mountain Valley has provided the BLM with a final POD, entitled the MVP Project POD dated June 2022 (Attachment A, Exhibit B), which details how the pipeline and associated facilities will be constructed in compliance with Grant terms, conditions, and stipulations. The BLM approves this POD and includes it as a part of the Grant. Mountain Valley shall construct, operate, and maintain the facilities, improvements, and structures within the ROW, and areas authorized by the TUP in strict conformity with the POD. Any relocation, additional construction, or use that is not in accordance with the approved POD shall not be initiated without the prior written approval of the Authorized Officer (AO).

## 2.1 Project Construction and Operation

The Department has considered and reviewed Mountain Valley's POD (Attachment A, Exhibit B), submitted as part of the ROW application process consistent with 43 C.F.R. § 2884.11. Table 1 shows the POD's project-specific plans developed to reduce construction impacts.

These and other mitigation plans and procedures are referenced in, and included as, appendices to the POD.

Table 1: Project-Specific Plans in the Plan of Development

| Appendix | Appendix Name |
|---|---|
| A | Map Appendix |
| B | Details Appendix |
| C | Erosion and Sedimentation Control |
| D | Spill, Prevention, Control and Countermeasure (SPCC) Plans and Unanticipated Discovery of Contamination (UDC) Plans |
| E | Contingency Plan for the Proposed Crossing of the Appalachian National Scenic Trail |
| F | Landslide Mitigation Plan |
| G | Site-Specific Design of Stabilization Measures in Selected High-Hazard Portions of the Route of the Proposed Mountain Valley Pipeline Project in the Jefferson National Forest |
| H | Restoration Plan |
| I | Timber Removal Plan for the Jefferson National Forest |
| J | General Blasting Plan for Jefferson National Forest |
| K | Water Crossing Plans |
| L | Karst Mitigation Plan |
| M | Winter Construction Plan |
| N | Environmental Compliance Management Plan |
| O | Plan for Unanticipated Historic Properties and Human Remains for West Virginia and Virginia |
| P | Plan for Unanticipated Discovery of Paleontological Resources |
| Q | Framework Construction Emergency Preparedness and Response Plan |
| R | Framework for Operations, Maintenance, and Emergency Response Plan |
| S | Exotic and Invasive Species Control Plan |

| | |
|---|---|
| T | Herbicide Usage Plan |
| U | Stormwater Pollution Prevention Plan |
| V* | Plant and Wildlife Conservation Measures Plan |
| W | Fugitive Dust Control Plan |
| X | Fire Prevention and Suppression Plan |
| Y | Hazardous Materials Management Plan |
| Z | Flagging, Fencing, and Signage Plan |
| AA | Off-Highway Vehicle Management Plan |

* Appendix V incorporates the MVP Migratory Bird Conservation Plan (ROD, Attachment F)

As a condition of the ROW Grant, Mountain Valley shall not begin construction or other surface disturbance associated with the Grant in this Decision until it receives a written Notice to Proceed (NTP) from the AO or delegated agency representative. See 43 C.F.R. § 2886.10. Any NTP shall authorize construction or use only as therein expressly stated and only for the particular location, segment, area, and use described. In order to receive a NTP, Mountain Valley must:

1. Comply with all pre-construction requirements included in FERC's Order certifying the MVP Project (FERC 2017b) and adhere to the project timeline in FERC's Order extending the MVP Project completion date to October 13, 2026 (FERC 2022). This includes written confirmation from FERC's Director, Office of Energy Projects, that Mountain Valley has complied with Condition 28 of Appendix C of FERC's certificating Order.
2. Comply with all pre-construction requirements included in the ROW Grant.
3. Comply with all pre-construction requirements included in the December 20, 2017 National Historic Preservation Act (NHPA) Section 106 Programmatic Agreement (Attachment D).
4. Provide the BLM and FS with documentation that Mountain Valley's obligations pursuant to FERC's Order have been met.

## 2.2 Bonding

In December 2017, Mountain Valley posted a performance bond in the amount of $8,665,838 to ensure adequate adherence to all terms and conditions on Federal lands. The bond applies to the following:

- Restoration and reclamation of disturbed areas and other requirements relative to the construction phase of the project until these have been accepted by the Authorized Officer. Other requirements include, but are not limited to, completion of all required reports, providing all essential records, and permanent curation of artifacts. Upon completion, or partial completion, of these construction related requirements, the Authorized Officer may terminate or reduce the amount of the bond. The bonding amount for reclamation activities is $3,909,838.
- Accommodating all cultural resources costs associated with implementing the

Programmatic Agreement (PA) (FERC 2017d, ROD Attachment D) and approved treatment plans or other mitigation activities, as negotiated by the Holder where they contract for services in support of the PA. Such costs may include, but are not limited to, treatment, field work, post-field analyses, research, and report preparation, interim and summary reports preparation, the curation of project documentation and artifacts collects (except for Native American Graves Protection and Repatriation Act [NAGPRA] related human remains and cultural artifacts) in an Agency-approved curation facility, and costs associated with the repatriation of NAGPRA items. The bonding amount for cultural work is $2,500,000.

- Implementing decommissioning activities, including physical disconnection, cleaning and purging, filling and sealing, pipeline removal, surface reclamation, and purchase of fill and reclamation materials. The bonding amount for decommissioning activities is $1,256,000.
- Liability for damages or injuries resulting from releases or discharges of Hazardous Materials or Hazardous Waste during the construction and reclamation phase of the project. The bonding amount for Hazardous Materials or Hazardous Waste liability is $1,000,000.

The bond may be released as specific tasks are completed and accepted by the BLM. This bond must be maintained in effect until temporary improvements used during construction are removed; restoration and reclamation of the ROW has been accepted by the AO; and all products required by the PA and the Grant have been accepted by the BLM and the FS, as appropriate.

## 2.3 Decommissioning on Federal Lands

Upon termination of the Grant, all facilities on Federal lands will be decommissioned in accordance with an abandonment plan that will be reviewed and approved by the BLM, FS, and FERC. Any aboveground pipeline facilities or markers will be completely removed and the associated location will be restored to as near original condition as possible. The underground pipe will be purged of gas, cleaned, isolated from interconnections with other pipelines, sealed, and left in place.

## 2.4 Mitigation Measures

The Proposed Action incorporates required mitigation measures and design features. The BLM has determined that all practicable means to avoid or minimize environmental effects of the Proposed Action have been analyzed in the FERC FEIS, 2020 FSEIS and 2023 FSEIS and will be incorporated into the ROW grant. The terms and conditions (including stipulations) are required for protection of the environment and the public interest, as required by 30 U.S.C. § 185(h)(2); 43 C.F.R. § 2885.11(b).

### 2.4.1 Terms, Conditions, and Stipulations

This decision is contingent on meeting all terms, conditions, and stipulations for NFS lands

included in the BLM's Grant and in FERC's Certificate. The ROW Grant includes additional stipulations identified by the FS in its concurrence letter (Attachment B).

As outlined in Section 2.2.2.2 of the 2023 FSEIS, an integral part of the proposed action is the POD that outlines the steps that MVP must follow during the construction, operation, and maintenance of the project on federal lands, including mitigation measures and project design features. The POD includes resource mitigation for reducing or eliminating effects to resources. Specific resource mitigation plans are included in the POD as appendices, which were approved by the FS and BLM. Any requests made by the ROW holder for activities on NFS lands, relocation, additional construction, or use, that are not included in the approved POD, must be requested to the FERC through the variance process outlined in the POD, Appendix N. Any significant proposed change, including a change outside of the approved ROW Grant or construction modification determined to be a substantial deviation, requires the ROW holder to seek an amendment to the ROW Grant from the BLM consistent with 43 C.F.R. § 2887.10. If accepted, the variance (or amended ROW Grant) becomes an amendment to the POD.

Mitigation measures incorporated into the POD are designed to minimize the potential for soil movement and ensure adequate restoration and revegetation. These mitigation measures are outlined in the Erosion and Sediment Control Plan (POD, Appendix C), Landslide Mitigation Plan (POD, Appendix F), the Site-Specific Design of Stabilization Measures in High Hazard Portions of the Route (POD, Appendix G), the Restoration Plan (POD, Appendix H), and the Winter Construction Plan (POD, Appendix M). In addition, the Project will be compliant with the FERC Upland Erosion Control, Revegetation, and Maintenance Plan (FERC 2013a) and the FERC Waterbody and Wetland Construction and Mitigation Procedures (2013b); and will follow Best Management Practices (BMPs) for the states of West Virginia and Virginia. Monitoring of initial construction activities identified instances where erosion control devices (ECDs) needed repair or replacement due to excessive precipitation or other factors. Enhanced ECDs were added to these areas to reinforce protection of resources and to minimize the risk of future damage or ECD failure.

The Proposed Action incorporates required mitigation measures and design features. The BLM has determined that all practicable means to avoid or minimize environmental effects of the Proposed Action have been analyzed in the FERC FEIS and FERC Boring EA, the 2020 FSEIS and the 2023 FSEIS and will be incorporated into the ROW Grant.

**Requirements in the 2023 Biological Opinion**

The ROW Grant and TUP incorporate the reasonably prudent measures, terms and conditions, and monitoring and compliance reporting requirements in the U.S. Fish & Wildlife Service (USFWS) Biological Opinion (BO) (USFWS 2023a) (Attachment C), prepared in compliance with Section 7 of the ESA, that apply to actions on NFS lands. The Natural Gas Act designates the FERC as the "lead agency for the purposes of coordinating all applicable authorizations." 15 U.S.C. § 717n. Consequently, the FERC has responsibility to consult under the ESA for the entire MVP Project, including those portions on NFS lands, and the BLM is relying on the FERC's consultation as the lead agency for such ESA compliance, which resulted in the USFWS

BO. The BO requires the FERC or the applicant to notify the USFWS regarding the projected and actual re-start dates, progress, and completion of the project and verify that all conservation measures were followed, and to provide a report to the USFWS containing this information by December 31 of each year until construction is complete. The BO requirements include:

Candy Darter

- Provide information to individuals involved in project construction on how to avoid and minimize potential effects to the candy darter.
- Minimize instream foot traffic in candy darter watersheds during construction.
- Minimize and monitor incidental take caused by elevated suspended sediment concentration/turbidity and sedimentation due to construction activities.

Indiana Bat

- Provide information to individuals involved in project construction on how to avoid and minimize potential effects to the Indiana bat.
- Finalize the Memorandum of Understanding regarding federally listed bat mitigation prior to the completion of project construction.
- Avoid conducting future tree removal activities within unknown use spring staging/fall swarming habitat during April and October, whenever possible.
- Adhere to the BO monitoring and reporting requirements for the Indiana bat.

Northern Long-Eared Bat

- Provide information to individuals involved in project construction on how to avoid and minimize potential effects to the northern long-eared bat.
- Finalize the Memorandum of Understanding regarding federally listed bat mitigation prior to the completion of project construction.
- Avoid conducting future tree removal activities within unknown use spring staging/fall swarming habitat during April and October, whenever possible.
- Adhere to the BO monitoring and reporting requirements for the northern long-eared bat.

Roanoke Logperch

- Provide information to individuals involved in project construction on how to avoid and minimize potential effects to the Roanoke logperch.
- Adhere to the BO monitoring and reporting requirements for the Roanoke logperch.

### 2.5 Compliance Monitoring and Reporting

Mountain Valley will continue to fund third-party compliance environmental inspectors/monitors for pipeline construction and aboveground facility construction. These monitors will report directly to the BLM, FS, and FERC. Their role and responsibility is to ensure compliance with all terms, conditions, and stipulations of the Grant, FERC's Certificate, and other permits, approvals, and regulatory requirements as described in Table 1.5-1 of the FERC FEIS. The environmental inspectors/monitors shall follow the Environmental Compliance Management Plan included in the POD (Appendix N). Mountain Valley will also be responsible for funding third-party monitoring of the reclamation and stabilization of the pipeline over the long term. Included in this requirement, among other things, is the yearly monitoring of the ROW for invasive plants and, if necessary, spraying as outlined in the Exotic and Invasive Species Control Plan and Herbicide Use Plan included in POD Appendices S and T, respectively of the POD (Attachment A).

The FS will continue to monitor implementation of the mitigation measures on NFS lands to assure that the terms and conditions of the ROW Grant issued by BLM are carried out (40 C.F.R. § 1505.3) and that negative impacts from construction and operation of the pipeline on federal lands are minimized to the extent possible. As during initial construction activities, compliance monitors will be present during construction and restoration activities to inspect construction procedures and mitigation measures and provide regular feedback on compliance issues to FERC, the FS, and the BLM. Objectives of the compliance monitoring program are to facilitate the timely resolution of compliance issues in the field; provide continuous information to FERC regarding noncompliance issues and their resolution; and review, process, and track construction-related variance requests. The FERC, BLM, and FS have the authority to issue a stop work order for the Project on NFS lands in the event of serious non-compliance that could reasonably be expected to result in a risk of death or harm to persons, or repeated violations of environmental requirements that have a detrimental effect to sensitive resources (ROW Grant and POD, Appendix N-Environmental Compliance Management Plan).

Changes to approved mitigation measures, construction procedures, and construction work areas due to unforeseen or unavoidable site conditions are subject to the variance reporting and authorization procedures described in the POD, Appendix N-Environmental Compliance Management Plan.

## 3 Alternatives Considered

The BLM and the FS considered a range of alternatives originating from the following sources: the FERC FEIS (FERC 2017a), the 2020 FSEIS (FS 2020), the revised MVP application (DOI 2022), and the 2023 FSEIS (FS 2023a).

### 3.1 FERC FEIS

Section 3.0 of the FERC FEIS included the no action alternative, the proposed action, major

route alternatives, route variations, alternative modes of transportation, and system alternatives. The analysis and screening process for alternatives was detailed in Section 3.2 of the FERC FEIS (pp. 3-4 to 3-119).

### 3.1.1 Major Route Alternatives Considered in Detail

In addition to the Proposed Action and the No Action Alternatives, the FERC FEIS evaluated four major route alternatives to the MVP proposed pipeline route or major portions (i.e., exceeding 50 miles in length) of the routes: Alternative 1; Hybrid 1A; Hybrid 1B; and the Northern Pipeline–ACP Collocation Alternative (FERC FEIS, pp. 3-20 to 3-32). With the exception of the No Action Alternative, all of these alternatives crossed NFS lands for some portion of the overall Project.

#### 3.1.1.1 No Action Alternative

The No Action Alternative evaluated the resulting environmental effects from taking no action as compared with the effects of permitting the proposed activity.

#### 3.1.1.2 Proposed Action Alternative (Environmentally Preferable)

The environmentally preferable alternative is the Proposed Action described in Section 2.0 of the FERC FEIS for the MVP Pipeline Project as modified to include mitigation measures required by FERC, BLM, FS, USFWS, and other Federal agencies.

The Proposed Action identified in the FERC FEIS applicable to NFS lands included:

- The use of a 125-foot-wide temporary construction ROW (54 acres) for pipeline installation and trench spoil. Once construction is complete, the MVP would retain an approximately 50-foot-wide[5] authorized ROW (22 acres) to operate the pipeline.
- Construction of a 42-inch diameter pipeline across 3.5 miles of the JNF.
- Installation of surface pipeline markers to advise the public of pipeline presence and cathodic pipeline protection test stations that are required by Department of Transportation (DOT).

#### 3.1.1.3 Alternative 1 and Hybrid 1A

Alternative 1 and Hybrid 1A were designed to collocate with existing transmission lines to the extent possible. Hybrid 1A combined the northern half of the proposed route with the southern half of Alternative 1 and both crossed 1.9 fewer miles of NFS lands, although at a different location from the proposed route. These routes crossed the Appalachian National Scenic Trail (ANST) but at a different location from the proposed route. Over the entire route, these alternatives were 20 miles longer, crossed the New River twice, and crossed about 43 more miles of steep slopes, 7 more miles of side slopes and 14 more miles of karst terrain. FERC concluded that Alternative 1 and Hybrid 1A do not offer a significant environmental advantage when compared to the proposed route.

#### 3.1.1.4 Hybrid Alternative 1B

[5] The width of the authorized ROW is 50 feet (including the ground occupied by the pipeline).

Hybrid 1B was the combined northern half of Alternative 1 with the southern half of the proposed route, where it crossed the JNF at the same locations as the proposed route. Hybrid 1B increased the total route length by almost 15 miles and crossed 28.7 more miles of steep slopes and 22 more miles of side slopes compared to the proposed route. FERC concluded that Hybrid 1B does not offer a significant environmental advantage when compared to the corresponding proposed route.

### 3.1.1.5 Northern Pipeline–ACP Collocation Alternative

The Northern Pipeline-ACP Collocation Alternative involved building the MVP adjacent to the proposed Atlantic Coast Pipeline, a then-proposed 42-inch diameter pipeline, for about 205 miles. The collocated route did not cross the JNF but crossed the George Washington National Forest (GWNF) for about 12 miles and the Monongahela National Forest for about 5 miles. This alternative crossed the ANST on the GWNF. However, because the collocation would require a 250-foot-wide construction ROW to accommodate both pipelines, much of which presented significant constructability issues related to topography and space, FERC concluded that this alternative does not provide a significant environmental advantage over the proposed route. It should be noted that the ACP project has been cancelled so collocation is no longer an option.

### 3.1.1.6 Route Variations Considered in Detail

Route variations are shorter than major route alternatives, but are generally longer and more substantial than minor route deviations designed to avoid or further reduce impacts on specific localized resources. The FERC FEIS included evaluation of 12 route variations that affect NFS lands: Highway Collocation; Variations 110, 110R and 110J; SR-635-ANST; Columbia Gas of Virginia; American Electric Power-ANST; Brush Mountain 1 and 2; Slusser Chapel; State Route (SR) 635-ANST; and American Electric Power (AEP)-ANST (FERC FEIS, pp. 3-44 to 3-55). FERC concluded none of these variations offer a significant environmental advantage when compared to the proposed route.

Two route variations for crossing the ANST at different locations were the SR 635-ANST and the AEP-ANST. A comparative analysis of environmental impacts of the proposed route and the SR 635-ANST and AEP-ANST Variations was presented in table 3.5.1-6 of the FERC FEIS.

## 3.2 FS 2020 FSEIS

The 2020 FSEIS (Section 2, pp. 33-63) described and compared the alternatives considered for the MVP Project, directly responding to the deficiencies identified in the Fourth Circuit's decision (U.S. Court of Appeals 2018). The 2020 FSEIS also responded to the Fourth Circuit's decision directing the FS to demonstrate that it independently reviewed the reasonable off-forest routes. The FS included the No Action alternative as required by the NEPA regulations and the Proposed Action alternative developed to respond to the FS's purpose and need for the project. The alternatives presented in the 2020 FSEIS reflected the narrow scope and decision space the FS and BLM have in context of the broader FERC decision.

The 2020 FSEIS also included BLM's August 23, 2018, Practicality Analysis and the September 2, 2020, addendum to the 2018 Analysis, which addressed the deficiency in BLM's December 20, 2017, ROD as identified in the Fourth Circuit's decision. Consistent with 30 U.S.C. § 185(p), the BLM analyzed whether collocating Mountain Valley's proposed ROW with existing rights-of-way on federal lands was practical, concluding that the proposed ROW does provide for collocation with existing rights-of-way on federal land to the extent practical. See 2020 FSEIS, Appendix A.

### 3.2.1 Alternatives Considered in Detail

#### 3.2.1.1 No Action Alternative

Under the No Action alternative analyzed in the 2020 FSEIS, the Forest Plan would not be amended, and no FS concurrence would be provided to the BLM for granting of a ROW and TUP across NFS lands for the construction, operation, and maintenance of the MVP. The BLM would not issue a ROW or a TUP. The current Forest Plan would continue to guide management of the project area and no Forest Plan amendment would be necessary. Mountain Valley would have to utilize other lands for the pipeline in order to satisfy the stated demand for natural gas and energy in the project area, or end users would have to seek alternate energy from other sources such as other natural gas transporters, fossil fuels, or renewable energy.

Mountain Valley would be required to restore the JNF project area to its pre-project condition. Materials including sections of pipe would be removed from the ROW (pipe has been laid on the ROW surface, but no trenching has occurred and no pipe has been installed), stockpiled topsoil would be amended as needed and spread over the disturbed portion of the ROW, and the ROW would be restored. Upon successful restoration, erosion control devices (ECDs) would be removed.

#### 3.2.1.2 Proposed Action Alternative

The FS analyzed the Proposed Action in the 2020 FSEIS (Section 2.2.2) and concurred with FERC's conclusion (FERC FEIS, Section 3.1.1) that the No Action alternative does not meet the stated purpose of the MVP and likely would not offer a significant environmental advantage.

The 2020 FSEIS considered changes to the Proposed Action as contemplated and authorized by FERC. Since publication of the FERC FEIS, Mountain Valley determined that the ROW could be accessed using only off-NFS roads; use of Pocahontas and Mystery Ridge roads was no longer part of the Proposed Action. Since publication of the FERC FEIS, FERC approved a variance request from Mountain Valley to change the crossing method of the four unnamed tributary streams on NFS lands from a dry-ditch open cut method as indicated in the FERC FEIS to conventional bores to reduce effects to Waters of the United States and potential sedimentation effects in the JNF (Attachment E2; FERC 2020a). The 2020 FSEIS analyzed both the originally proposed dry-ditch open cut crossing method and the conventional bore method in the variance.

## 3.3 FS 2023 FSEIS

The 2023 FSEIS described and compared the No Action and Proposed Action alternatives for the MVP Project, directly responding to the deficiencies identified in the Fourth Circuit's January 25, 2022, decision. The No Action alternative remained unchanged since the 2020 FSEIS and the Proposed Action was modified to include the use of a conventional bore method for crossing the four streams on NFS lands. These alternatives in the 2023 FSEIS reflected the narrow scope and decision space the FS and BLM had in context of the broader FERC decision.

### 3.3.1 Alternatives Considered in Detail

#### 3.3.1.1 No Action Alternative

The No Action Alternative is unchanged from the 2020 FSEIS. In summary, under the No Action Alternative, the Forest Plan would not be amended, and no FS concurrence would be provided to the BLM for granting of a ROW across NFS lands for the construction and operation of the MVP. The current Forest Plan would continue to guide management of NFS lands in the project area.

The Forest Service would require Mountain Valley to remove stored pipes (none were buried) and associated staging materials and restore the JNF project area to as close to the pre-project condition as practicable or possible.

#### 3.3.1.2 Proposed Action Alternative (Environmentally Preferred Alternative)

As described in detail in the 2023 FSEIS, under the proposed action, the Forest Service would amend the Forest Plan as necessary to allow for the MVP to cross the JNF and concur in a decision by the BLM to grant a ROW and a TUP under the MLA, 30 U.S.C. §185. Changes to the Proposed Action since publication of the 2020 FSEIS included using a conventional bore method for crossing the four streams on NFS lands (the potential use of dry-ditch open trench methods was no longer under consideration). The access to the ROW would remain using only off-NFS roads; Mountain Valley would not use Pocahontas and Mystery Ridge Roads for access. The ROW grant and TUP would incorporate relevant portions of the 2023 USFWS BO (for example, portions related to species [e.g., listed bats] which have the potential to be affected by activities on NFS lands).

The MLA ROW would include terms and conditions, or stipulations, to protect resources and the public interest consistent with the MLA, 30 U.S.C. § 185(h). The construction and operation and maintenance actions that would be addressed in these terms and conditions include:

- Construction of a 42-inch pipeline across 3.5 miles of the JNF.
- The use of a 125-foot-wide temporary construction ROW for pipeline installation and trench spoil. Once construction is complete, the MVP would retain a 50-foot-wide authorized ROW to operate the pipeline.
- Installation of surface pipeline markers to advise the public of pipeline presence and cathodic pipeline protection test stations that are required by DOT.

Upon termination of the Grant, all facilities on Federal lands would be decommissioned in accordance with an abandonment plan that would be reviewed and approved by the BLM, Forest

Service, and FERC. At that time, additional NEPA review may be necessary. Any aboveground pipeline facilities or markers would be completely removed, and the associated location would be restored to as close to the pre-project condition as practicable or possible. The underground pipe would be purged of gas, cleaned, isolated from interconnections with other pipelines, sealed, and left in place. As required by 40 C.F.R. § 1505.2(b), an agency must specify the alternative or alternatives considered to be environmentally preferable. The environmentally preferred alternative is the alternative route that, on balance, appears to have the lowest overall impact on the natural, human, and cultural environment, including resources uses.

# 4 Management Considerations and Decision Rationale

The BLM, with concurrence from FS, selected the Proposed Action alternative in the 2023 FSEIS across NFS lands because the proposed use is consistent with the purpose for which the FS manages the lands described in the ROW application, the infrastructure will support the nation's energy demand, and because it is the environmentally preferred alternative. In 2017, FERC examined the natural gas demand issue and found that "Mountain Valley has sufficiently demonstrated that there is a market demand for its project" and found that "end users will generally benefit from the projects because they will develop gas infrastructure that will serve to ensure future domestic energy supplies and enhance the pipeline grid by connecting sources of natural gas markets in the Northeast, Mid-Atlantic, and Southeast regions" (FERC 2017b, pp. 18 to 19).

The Proposed Action is considered the environmentally preferred alternative because it includes mitigation measures required by FERC, BLM, FS, USFWS, and other Federal agencies that must be applied during construction and operation of the pipeline, as well as restoration of the TUP areas. On the JNF, much of the disturbance to the physical and biological environment has already occurred. After the BLM's issuance of the ROW grant in 2017, implementation began. All trees in the proposed ROW were felled to create the ROW corridor. On Sinking Creek Mountain and Brush Mountain, soils were removed from the ROW and stockpiled, and erosion control devices were installed. Since FERC issued the Stop Work Order in July 2018, stabilization activities have been in place. These stabilization activities include seeding of the disturbed ROW on NFS lands, installation of erosion control devices, and maintenance of the sedimentation and erosion control measures. The Proposed Action will preserve historic, cultural, and other important aspects of our heritage including the ANST. ANST users could experience minor short-term impacts from noise and construction dust but long-term impacts are not anticipated (2020 FSEIS, Sec 3.4.4). Cultural sites will be protected in compliance with the NHPA (2020 FSEIS, Sec. 3.3.3).

Under the No Action alternative, the proponent would be required to restore JNF lands to pre-project conditions (2023 FSEIS, Section 2.4). Regrowth of non-native species, namely princess tree and tree of heaven, would be an adverse effect of Alternative 1 (2023 FSEIS, Section 3.2.8).

If Mountain Valley pursued completing the pipeline along a different route, a potential increase in area of disturbance would occur on non-NFS lands, particularly increasing effect to wetlands

and waterbodies.

Additionally, while the Proposed Action will require additional disturbance of NFS lands as felled trees are removed from the site, the pipeline is installed, and crossings are constructed across four streams and under the ANST, the mitigation measures imposed as part of the proposed action will ensure the preservation of natural, historic, cultural, and other important aspects of our heritage, including the ANST. In balancing environmental consequences disclosed in the FERC EIS, 2020 FSEIS, and 2023 FSEIS with the benefits of supporting the nation's energy demand, the Proposed Action is the environmentally preferable alternative.

Based on FERC's Certificate (FERC 2017b), the record supporting FERC's decision, the USACE's concurrence, the FS's concurrence, and the Department's independent review of the project, the Department concludes that the proposed use will be in the public interest. Based on the information Mountain Valley submitted in its application, the Department has determined that Mountain Valley is qualified to hold a grant and has the technical and financial capability to construct the pipeline and operate facilities within the ROW.

The Department has not issued a deficiency notice related to this project, and Mountain Valley complied with all of FERC's Environmental Information Requests. The Department has determined that issuing the ROW and TUP as conditioned is consistent with the MLA, BLM's regulations, and other relevant laws. The Department's stipulations require the operator to comply with Federal and State standards for public health and safety, environmental protection and siting, construction, operation, and maintenance, including where State standards are more stringent than Federal standards for similar projects.

In coming to the decision to grant the ROW and TUP for the MVP Project, the Department independently considered the environmental impacts described in the FERC FEIS, the 2020 FSEIS, and the 2023 FSEIS that included a review of FERC's 2021 Boring EA analysis for its applicability to the conventional bore crossing of streams on the JNF (FS 2023a, Appendix C). The Department also considered public comments submitted during the FERC EIS and both FS SEIS processes, the results of consultation efforts, the final POD dated June 2022, and FS's concurrence with the issuance of a ROW grant and TUP and decision to amend the JNF Forest Plan. The Department also considered the proposed action's conformance with applicable land use plans. Since there are no lands administered by the BLM associated with the MVP project, the project is not subject to BLM land use plan conformance. The FS ROD (FS 2023b) approved a Forest Plan amendment that allowed the MVP project to be consistent with standards in the JNF Forest Plan.

The FERC FEIS identified and addressed the impacts associated with Mountain Valley's proposed action across all land jurisdictions, including Federal lands. The 2020 FSEIS addressed the key issues identified by the Fourth Circuit's 2018 decision and any relevant new information and changed circumstances on NFS lands. The 2023 FSEIS addressed the key issues identified by the Fourth Circuit's 2022 decision and any relevant new information and changed circumstances on NFS lands. The 2023 FSEIS key issues including those identified by the Fourth Circuit, are: (1) consideration of sedimentation and erosion real-world data related to the

Project; (2) compliance with the 2012 Planning Rule (36 CFR Part 219); and (3) review of the conventional bore method to construct stream crossings. The 2023 FSEIS analyzed in detail the proposed action's impact on the following resources on NFS lands: water resources; threatened, endangered and sensitive species; and those related to amending the JNF Forest Plan under the NFMA (utility corridors, soil and riparian, old growth, the ANST, and scenic integrity). For other resources and the Practicality Analysis, the Fourth Circuit's 2018 and 2022 decisions and 2023 FSEIS provided a rationale to support why the analyses in the FERC FEIS and the 2020 FSEIS remain adequate.

The analysis in the 2023 FSEIS (FS 2023a, pp. 39-49) concluded the available relevant data, including the Forest Service's and BLM's consideration of monitoring information from U.S. Geological Survey (USGS) data, MVP, Virginia Department of Environmental Quality (VDEQ), and Transcon Environmental Inc. (Transcon), are all consistent with the conclusion that the ECDs as modeled in Revised Universal Soil Loss Equation 2 (RUSLE2) on the JNF continue to be effective in minimizing sediment runoff, and that observations of elevated sediment levels within the watershed likely result from multiple land uses. With continued implementation and monitoring of ECDs, short-term adverse effects on water resources would be minor to moderate. Over the long term, adverse effects are anticipated to be minor because the POD and Project Design requirements would minimize construction-related effects to soils, such as trench excavation, backfilling, contouring, and the movement of construction equipment.

This analysis also demonstrates the Forest Service's and BLM's consideration of USGS data and other relevant information related to the modeling used in the 2020 FSEIS and the actual impacts of the pipeline and its construction. Relevant data and information indicate that construction activities associated with the pipeline are potential contributors to turbidity and sediment in local streams along with other land uses in the watersheds that may produce sediment during rainfall events. Because RUSLE2 is not designed to be validated with in-stream water quality monitoring data, it is not possible to conclusively determine if the USGS data and other relevant information are consistent with the modeling. However, examination of both quantitative data (i.e., USGS and MVP monitoring data) and inspection and monitoring reports (i.e., VDEQ and Transcon) that visually examine the ROW (including in direct response to potential sediment-delivering events) do not suggest that actual data are inconsistent with the modeling used in the 2020 FSEIS.

As detailed in the FERC FEIS, the 2020 FSEIS, and 2023 FSEIS, construction and operation of the Proposed Action alternative will result in some adverse environmental impacts. These impacts will be reduced or avoided with the implementation of Mountain Valley's mitigation measures in the POD (Attachment A, Exhibit B), State BMPs, FERC's Upland Erosion Control, Revegetation and Maintenance Plan (FERC 2013a), and FERC's Wetland and Waterbody Construction and Mitigation Procedures (FERC 2013b). Additional details regarding the consideration of impacts to specific resources from the proposed action are provided below.

## 4.1. Water Resources

The 2020 FSEIS (pp. 95 to 102) found that effects on water resources from implementation of

the Proposed Action would occur over the short and long term. Short-term impacts would be associated with construction and would be minor. Construction activities are not likely to significantly affect groundwater resources because the majority of construction would involve shallow excavations. The Project would prevent or adequately minimize accidental spills and leaks of hazardous materials into groundwater resources during construction and operation by adhering to its Spill Prevention, Control, and Countermeasure Plan in the POD. To reduce effects on waterbodies, the POD identifies measures to minimize effects, such as BMPs and ECDs. Long-term impacts would be associated with post-construction restoration and operation and maintenance and would be minor because disturbed areas would be revegetated, reducing the potential for sedimentation in surface water features.

To determine potential impacts to water resources on NFS lands, the BLM conducted a site visit in October 2022 to review each stream crossing on NFS lands and the Roanoke River in Lafayette, Virginia. The BLM also independently reviewed the following information:

- 2020 *Hydrologic Analysis and Hydrologic Analysis for the JNF* (Geosyntec Consultants 2020a, 2020b)
- Draft 2015-2019 George Washington and Jefferson National Forests (GWJ) Monitoring Evaluation Report (Forest Service 2020b)
- Previously received public comments received regarding water resources
- MVP's Sediment Monitoring Analysis (Appendix L of the 2022 SBA)
- Approved erosion and sediment control plans (POD Appendices C-1 through C-3)
- USGS in-stream water quality monitoring data, 12 in-stream stations beginning in 2017
- MVP in-stream water quality monitoring data, responsive to USFWS 2020 BO Monitoring Plan
- VDEQ in-stream water quality monitoring data and inspection reports, since 2018
- Transcon ROW site inspection reports on the JNF, third-party compliance inspection contractor reporting to the FS, since 2018

The 2023 FSEIS (pp. 37 to 47) demonstrated the available, relevant data, including the Forest Service and BLM's consideration of monitoring information from USGS data, MVP, VDEQ, and Transcon, are all consistent with the conclusion that the ECDs as modeled in RUSLE2 on the JNF continue to be effective in minimizing sediment runoff, and that observations of elevated sediment levels within the watershed likely result from multiple land uses. With continued implementation and monitoring of ECDs, short-term adverse effects on water resources would be minor to moderate. Over the long term, adverse effects are anticipated to be minor because the POD and Project Design requirements would minimize construction-related effects to soils, such as trench excavation, backfilling, contouring, and the movement of construction equipment.

MVP will use the conventional bore method for the four stream crossings on NFS lands, as approved by FERC (FERC 2020), which will further reduce impacts to water resources. The 2023 FSEIS incorporated by reference the 2021 FERC Boring EA (FERC 2021) regarding the use of conventional boring methods for stream crossings. The 2023 FSEIS Attachment C is a review of the 2021 FERC Boring EA analysis for its applicability to stream crossings on the JNF. The review concluded that the FERC EA's analysis is consistent with the conclusions in the 2020 FSEIS and that, overall, conventional bore stream crossings would result in fewer adverse effects for stream crossings on NFS lands (2023 FSEIS, Appendix C, p. 202).

## 4.2 Threatened, Endangered and Sensitive Species

The 2023 FSEIS analyzed changed conditions occurring since the 2020 FSEIS that are related to potential impacts to aquatic and terrestrial threatened, endangered and sensitive species (pp. 50 to 61, pp. 117 to 118). The analysis included reviews of the following information: species surveys; the FERC FEIS; independent agency review in 2022 of the *Hydrologic Analysis for the JNF* (Geosyntec Consultants 2020b) and the *Hydrologic Analysis for Aquatic Species* (Geosyntec Consultants 2020a); the 2017 Biological Assessment (BA) and 2020 and 2022 SBAs (FERC 2017c, MVP 2020, MVP 2022); the 2017, 2020 and 2023 USFWS BOs (USFWS 2017, 2020, 2023a); the 2017, 2020, and 2022 Biological Evaluations (BEs) (MVP 2017; Copperhead 2020; Copperhead 2022); the POD and appendices (Appendix A, Exhibit B); and data and information described in public comments on the DSEIS.

### 4.2.1 Aquatic Species

Since the 2020 FSEIS, changed conditions for aquatic species include: issuance of the 2021 FERC Boring EA regarding conventional boring; MVP sediment monitoring per the 2020 USFWS BO; the Fourth Circuit's February 3, 2022 opinion on the 2020 USFWS BO; changes to the status of Federally listed species and designated critical habitat; and changes to the Draft Updated Region 8 list of Regional Forester's Sensitive Species. Specifically, Critical Habitat for the candy darter was designated on May 7, 2021 and includes a segment of Stony Creek downstream of NFS lands. The Atlantic pigtoe was listed as Threatened under the ESA and Critical Habitat was designated on December 16, 2021, including in Craig Creek, downstream of NFS lands. In addition, the longsolid and the round hickorynut mussels were listed as Threatened under the ESA and Critical Habitat was designated on March 9, 2023. These two species and their designated Critical Habitat do not occur within the aquatic species Action Area, defined in the 2023 FSEIS. One aquatic species, the Tennessee dace, is proposed to be added and two species are proposed to be removed (Sickle darter and Allegheny County cave amphipod) from the Draft Updated Region 8 list of RFSS. Aquatic species for which there are no changed conditions or effects determinations (i.e., clubshell mussel, snuffbox mussel, yellow lance, and James spineymussel) are addressed in the 2017 FERC FEIS and 2020 FSEIS and supplemental analysis was not needed (FS 2023a, p. 51).

In consideration of the entire 303.5-mile-long project, the 2023 FWS BO concurs with a determination of **May Affect, Likely to Adversely Affect** for the candy darter, but finds it is not

likely to jeopardize the continued existence of the candy darter (FWS 2023b). No direct effects are anticipated for the candy darter on NFS lands since the four streams (unnamed tributaries of Craig Creek) crossed by the MVP on Brush Mountain and Sinking Creek Mountain are not known to harbor the candy darter (FWS 2023a; MVP 2022b). The JNF MVP crossings are not in the candy darter watershed and the anticipated effects remain consistent with those disclosed in the 2017 FERC SEIS and 2020 SEIS. No candy darter Critical Habitat occurs in the JNF waterbodies crossed by the MVP. The 2023 FWS BO determined that impacts from the MVP pipeline crossings of Kimballton Branch and Stony Creek, which are outside NFS lands, are not likely to jeopardize the continued existence of the candy darter. A thorough independent review of the MVP data was performed by Forest Service biologists and hydrologists. The Forest Service anticipates no indirect or cumulative effects from the MVP ROW on NFS lands on the candy darter (FS 2023a, p. 54).

Roanoke logperch are known to occur downstream of the MVP waterbody crossings within the North Fork Roanoke River; however, the occurrences are outside of the Project area and are beyond the extent of increased sedimentation modeled for the waterbody crossings within the JNF. The 2023 FWS BO and 2023 FWS letter agree with the determination of **May Affect, Likely to Adversely Affect** the species for the MVP as a whole, but finds it is not likely to jeopardize the continued existence of the Roanoke logperch. No suitable habitat occurs in the JNF and no effects from Project activities on the JNF are expected. (2023 FSEIS, p.55).

For the Atlantic pigtoe, the 2022 SBA proposed retaining the 2020 determination of **No Effect** because the 2021 listing and Critical Habitat designation did not provide new information about the species or its occurrences near the project area (MVP 2022b). The USFWS concurs with this determination (USFWS 2023b). As described in the 2020 FSEIS (pp. 98 to 99), populations of this species were not identified at any of the Project stream crossings, and the closest known population (according to the Virginia Department of Wildlife Resources [VDWR] Wildlife Environmental Review Map Service database) occurs in Craig Creek downstream of the confluence with Johns Creek approximately 30.2 miles downstream of the project area. (2023 FSEIS, p. 56).

The Tennessee dace does not occur in watersheds affected by the project and therefore was not included in the 2022 SBE or the 2023 FSEIS for further analysis (2023 FSEIS, p. 56).

### 4.2.2 Terrestrial Species

Since the 2020 FSEIS, changed conditions for terrestrial threatened, endangered and sensitive species include: the Fourth Circuit's February 3, 2022 opinion on the 2020 USFWS BO; changes to the status of the northern long-eared bat from threatened to endangered on November 29, 2022 USFWS proposal to list the tricolored bat on September 13, 2022; delisting of running buffalo clover on August 6, 2021; and changes to the Draft Updated Region 8 list of Regional Forester's Sensitive Species that includes the addition of three species (American bumble bee, little brown bat and American ginseng) and removal of ten species (Sickle darter, Rafinesque's big-eared bat, Appalachia bellytooth, brown supercoil, highland slitmouth, crossed dome, delicate vertigo, cupped vertigo, Alleghany County cave amphipod and Avernus cave beetle). Terrestrial species for which there are no changed conditions or effects determinations (i.e., gray bat, Virginia big-eared bat, rusty patched bumble bee, smooth coneflower, small whorled pogonia, and shale barren rock cress) are addressed in the 2017 FERC FEIS and 2020 FSEIS and

supplemental analysis was not needed. Additionally, the USFWS concurred with the effects determinations of these six terrestrial species (USFWS 2023b).

The USFWS concurred with an effects determination of **May Affect, Likely to Adversely Affect** for the Indiana bat for the MVP as a whole (USFWS 2023b). However, no effects are anticipated on the JNF. Indiana bats were not captured during 2015 and 2016 mist-net surveys, but it is assumed the species occupies potentially suitable summer habitat, spring staging/fall swarming habitat, and winter hibernacula in the Action Area where presence/probable absence surveys were not conducted. The USFWS confirmed that the areas where trees were cleared for the Project continue to be unsuitable for bat species and will be for years to come (USFWS 2023a). Based on coordination with Virginia Department of Wildlife Resources, no new capture or roost records have been reported with the species Action Area (MVP 2022b). Some Indiana bat individuals would possibly be impacted during construction and operation and maintenance of the Project (2023 FSEIS, p. 57). As summarized in Section 2.2.2.2 of the 2023 FSEIS, the Project would require implementation of measures to avoid, minimize, and mitigate adverse effects on the Indiana bat.

The USFWS concurred with an effects determination of **May Affect, Likely to Adversely Affect** for the northern long-eared bat for the MVP as a whole (USFWS 2023b). Results of summer mist-net and harp trap surveys conducted in 2015 confirmed presence of northern long-eared bats within the limits of disturbance. Additional mist-net surveys have not been required by USFWS since trees were removed in 2018 and the limits of disturbance is no longer considered bat habitat. Individuals present during spring staging and autumn swarming may be impacted during project development (2023 FSEIS, p. 57). As summarized in Section 2.2.2.2 of the 2023 FSEIS, the Project would require implementation of measures to avoid, minimize, and mitigate adverse effects on the northern long-eared bat.

The USFWS concurred with the determination of **Is Not Likely to Jeopardize** the tricolored bat for the MVP as a whole (USFWS 2023b). Bat surveys were conducted in 2015 and 2016, but no tricolored bats were captured within the JNF ROW. Forested areas of the JNF outside of the ROW provide potential summer habitat for tricolored bats. Additional mist-net surveys are not be required by USFWS since trees were removed in 2018 and the limits of disturbance is no longer considered bat habitat. No suitable cave openings or portals were observed along the proposed alignment on the JNF. There are no known winter hibernacula within 0.25 mile along the proposed alignment. The closest known hibernaculum is approximately 3 miles from the ROW crossing JNF lands. Additionally, no blasting will occur on the JNF, therefore, no effects to hibernacula would occur that have not been covered by other best management practices and conservation measures (i.e., noise, hydrology, and karst features) (2023 FSEIS, p. 58).

A **no Impact** determination was made for the American bumble bee. This species has not been documented in the JNF; however, tree removal of the regrowth on Peters Mountain may create potential American bumble bee habitat and could be beneficial for the species. Revegetation of the ROW would follow a two-step process as recommended by the Forest Service: 1) stabilization of soils immediately following tree removal and construction activities with appropriate seed mixes and techniques, and 2) revegetation of the ROW corridor as needed with

native seed mixes recommended in consultation with the Forest Service (2023 FSEIS, p. 58).

A **May Impact Individuals – Is Not Likely to Cause a Trend Toward Federal Listing or Loss of Viability** determination was made for the little brown bat. Summer habitat for little brown bats is present within the JNF in the form of trees. However, the removal of trees from the limits of disturbance has already occurred. There are no known winter hibernacula within the Project area on the JNF; however, there are three known hibernacula in Giles County. The closest hibernaculum to the JNF sections of the MVP is approximately 3 miles northwest of the Project. Indirect effects from blasting are not expected to detrimentally impact little brown bats in the vicinity of the Project area. Additionally, no blasting will occur on the JNF, therefore, no effects to hibernacula would occur that have not been covered by other BMPs and conservation measures (i.e., noise, hydrology, and karst features) (2023 FSEIS, p. 59).

A **May Impact Individuals – Is Not Likely to Cause a Trend Toward Federal Listing or Loss of Viability** determination was made for American ginseng. This species was found at three locations during plant surveys on alternative pipeline routes on JNF land that are no longer part of the proposed route (MVP 2017). Although suitable habitat is present within the Project area, tree removal within the limits of disturbance has already occurred; therefore, there is no longer under a closed canopy of mature trees or shaded that would provide habitat for the species. Potential effects from the introduction of invasive species have been covered by other mitigation measures (2023 FSEIS, p. 60).

# 5 Public Involvement

## 5.1 FERC EIS

The FERC FEIS, Section 1.4 (pp. 1-27 to 1-38), documented the public involvement that occurred from April 2015 through the DEIS comment period that ended on December 22, 2016, and is incorporated by reference. In summary, Section 1.4 described the publication of the Notice of Intent (NOI) to prepare an EIS in the *Federal Register* on April 17, 2015. The NOI was sent to 2,846 parties, including federal, state, and local government agencies; elected officials; environmental groups and non-government organizations; Native Americans and Indian tribes; affected landowners; local libraries and newspapers; and other stakeholders who had indicated an interest in the MVP.

The NOI initiated a 60-day formal scoping period and the FERC sponsored six public scoping meetings in the project area. The BLM provided an extra 30-day opportunity for public comment. Approximately 650 people attended those meetings. In addition to the NOI and the public scoping meetings, the FERC sent out brochures that updated the status of the environmental review process. The FERC received 964 comment letters during the scoping period and 428 letters after the scoping period had ended.

Table 1.4-1 in the FERC FEIS summarized the environmental issues and concerns identified by the commenters during the scoping process and identified the EIS section where each issue is addressed. The topics that generated the most interest and concerns over potential effects included water quality and aquatic resources, socioeconomics, and geology and soils.

On September 16, 2016, the Notice of Availability for the DEIS was published in the FR, and the 90-day comment period ran until December 22, 2016. The notice was sent to approximately 4,400 parties and during the comment period, seven meetings were held in the vicinity of the project area. The FERC received 1,237 written individual letters or electronic filings commenting, and Table 1.4-2 in the FERC FEIS summarizes the topics and where they are addressed in the FEIS.

In response to issues relative to the project and NFS lands, the FERC evaluated route alternatives and eliminated from detailed analysis some routes that would have located the project off of NFS lands (FERC FEIS, Section 3.4). Environmental effects specific to the JNF were disclosed in Section 4.

The BLM reviewed and considered the comments on the Final EIS in the preparation of this ROD. The BLM response to comments is included in the FERC FEIS, Appendix AA. In addition to the concerns directed towards BLM's action, several commenters included objections to the FS Draft ROD for a plan amendment to the JNF to accommodate the MVP. The FS completed its own internal objection process prior to release of their final ROD and concurrence with the BLM. The BLM did not have any jurisdiction over the FS objection process or the FS decision to amend the JNF Forest Plan.

## 5.2 FS 2020 SEIS

On July 30, 2020, FS and BLM published in the *Federal Register* a Notice of Intent (NOI) to prepare a supplemental EIS for Mountain Valley's revised application for a ROW to cross the JNF. The 2020 SEIS NOI clarified that scoping, a requirement for an EIS (40 C.F.R. § 1501.7; 36 C.F.R. § 220.4(c)(1)), was completed and summarized in the FERC FEIS (FEIS, Section ES-1.4).

Additionally, the 2020 SEIS NOI served as the public notification under 43 C.F.R. § 2884.20(a). A revised NOI was published December 2, 2020 to correct information regarding pre-decisional administrative review and the responsible official.

A Notice of Availability (NOA) was published by the EPA in the *Federal Register* on September 25, 2020, offering a 45-day comment period. FS distributed a postcard announcing the availability of the DSEIS to the 3,326 individuals on the FERC FEIS mailing list. In addition, postcards were sent to federal agencies, federally recognized tribes, state and local governments, and organizations representing a wide range of views (SEIS Section 4.4.1). The public comment period ended on November 9, 2020. Approximately 4,400 comment letters were received during the 45-day comment period. Timely comments were given full consideration and were analyzed for substantive content (40 C.F.R. 1503.3 and 40 C.F.R. 1503.4) (1978, as amended in 1986 and 2005). BLM participated in the review and response to public comments on the DSEIS. Content from analysis of comments yielded 134 statements which summarized the concerns expressed through public comment. Literature and references submitted with public comments was also reviewed for consideration. Where new information was found, it was assessed and, in some cases, resulted in changes to the FSEIS. These concern statements with FS and BLM responses can be found in Appendix C of the 2020 FSEIS. A NOA of the 2020 FSEIS was published in the

*Federal Register* on December 11, 2020. Comments received outside a formal public comment period have been reviewed and are a part of the project record.

## 5.3 FS 2023 SEIS

On November 17, 2022, FS and BLM published in the *Federal Register* a Notice of Intent (NOI) to prepare a supplemental EIS for Mountain Valley's revised application for a ROW to cross the JNF. The 2023 SEIS NOI clarified that scoping, a requirement for an EIS (40 C.F.R. § 1501.7; 36 C.F.R. § 220.4(c)(1)), was completed and summarized in the FERC FEIS (FEIS, Section ES-1.4). Additionally, the 2023 SEIS NOI served as the public notification under 43 C.F.R. § 2884.20(a).

A Notice of Availability (NOA) was published by the EPA in the *Federal Register* on December 23, 2022, offering a 45-day comment period. In response to public comments, the FS extended the comment period two weeks until February 21, 2023 (88 FR 8843). Approximately 364 comment letters, 9,100 form letters, and 53,781 signatures submitted via petitions were received during the 60-day comment period. Timely comments were given full consideration and were analyzed for substantive content (40 CFR §§ 1503.3 and 1503.4). Literature and references submitted with public comments were reviewed for consideration. Where new information was found, it was assessed and, in some cases, resulted in changes to the 2023 FSEIS. Changes between the DSEIS and the FSEIS are disclosed in FSEIS, Section 1.7. Comments received outside a formal public comment period were also reviewed and are a part of the project record.

Content from analysis of comments yielded 225 statements which summarized the concerns expressed through public comment. These concern statements and agency responses are included in the 2023 FSEIS (Appendix F). FS distributed a postcard announcing the availability of the DSEIS to the 3,326 individuals on the FERC FEIS mailing list. In addition, postcards were sent to federal agencies, federally recognized tribes, state and local governments, and organizations representing a wide range of views. A NOA of the 2023 FSEIS was published in the *Federal Register* on April 14, 2023. Consultation and Coordination

## 5.4 Cooperating Agencies

A cooperating agency may adopt an EIS of a lead agency when, after an independent review of the statement, the cooperating agency concludes that its comments and suggestions have been satisfied (40 C.F.R. § 1506.3). The FS and BLM were cooperating agencies for the FERC FEIS.

Section 1.5 of the FERC FEIS discusses the permits, approvals, and regulatory requirements pertaining to the MVP Pipeline Project. Within this discussion, Table 1.5-1 lists the major permits, approvals, and consultations required, and the FERC FEIS has been used by numerous Federal agencies for this purpose. The geographic scope and complexity of the project necessitated extensive data gathering, consultation and analysis with agencies at all levels of government.

BLM regularly met with and consulted with the FS regarding technical analysis related to each agency's respective decisions and coordinated SEIS outreach efforts. Additional regularly

scheduled consultation and coordination meetings between the USFS, BLM, USACE, and FERC

took place. FERC regularly consulted with the USFWS throughout the development of the 2023 BO.

## 5.5 Consultation under Section 7 of the Endangered Species Act

Consistent with the Natural Gas Act, the FERC remains the lead agency for consultation with the USFWS on the entire pipeline. 15 U.S.C. § 717n. Mountain Valley will have to comply with applicable provisions of the reasonable and prudent measures and terms and conditions in the 2023 BO (USFWS 2023a). The 2023 BO noted at the end of its Opinion that the petitioners in the Fourth Circuit FWS litigation related to MVP submitted materials to the USFWS, including new materials that had not previously been submitted. Although the USFWS noted in the 2023 BO that these materials came too late to be considered during consultation and addressed in the BO, the USFWS requested FERC and the other action agencies, including the FS and BLM, to assess whether the materials contain any new information that might prevent them from relying on this BO and meet their obligations under Section 7 of the ESA. On March 29, 2023, FERC submitted a letter to USFWS, as requested, concluding that the new materials do not contain any new information that would change FERC's effects determinations regarding proposed and listed species and proposed and designated critical habitat. FERC also concluded that the information in the comments from outside parties does not affect the findings or methodologies supporting the Biological Assessment. Consequently, FERC concluded that reinitiation of Section 7 consultation is not warranted.[6]

The FS and BLM conducted their own independent review of the materials submitted to the USFWS and determined that they do not contain new information that might prevent the agencies from relying on the BO to inform their decisions. This review included consideration of the commenters' expert report, submitted both as a public comment on the 2022 DSEIS and separately to the USFWS regarding the BO. (2023 FSEIS, Section 3.3.2 and Appendix F). The outside report criticized the Hydrology Analysis and modeling, as well as the agencies' review of real-world data to corroborate the modeling, which the commenters argued would undermine the USFWS's findings and conclusions in the 2023 BO.

Additional correspondence was exchanged between USFWS, FERC, NGOs (e.g., among others, The Wilderness Society and the Sierra Club), and Mountain Valley regarding the materials referenced above, including the commenters' expert report, in March and April 2023. On May 9, 2023, The Wilderness Society also sent a letter to the FS with excerpts from the correspondence and a suggestion that the FS's response to their comments in the 2023 FSEIS and the expert reports was inadequate. The agencies' hydrology experts and the USDA Natural Resources Conservation Service (NRCS) expert on the model relied on by the agencies reviewed this material and the additional correspondence, including the May 9, 2023, letter to the FS. The agencies' experts and the USDA NRCS expert concluded that the material offers no pertinent or new information that would affect the sedimentation modeling or the conclusions in the 2023 FSEIS. Relying on the

[6] Petitioners have challenged the USFWS's 2023 BO in the Fourth Circuit. On April 7, 2023, the Petitioners in the USFWS case also sent BLM and FS a Notice of Intent to file a citizen suit against the agencies for violation of Section 7 of the Endangered Species Act.

opinion of the agencies' experts, the FS and BLM conclude the materials submitted do not change the effects analysis in the 2023 FSEIS for threatened and endangered species. (2023 FSEIS, Section 1.11).

## 5.6 Consultation under Section 106 of the National Historic Preservation Act

Section 106 of the NHPA requires each Federal agency to take into account the effects of its actions on historic properties prior to approving expenditure of Federal fund on an undertaking or prior to issuing any license. Historic properties include historic sites, districts, buildings, structures, objects, or properties of traditional religious or cultural importance to an Indian tribe that are listed or eligible for listing on the National Register of Historic Places.

Consistent with the Natural Gas Act, the FERC remains the lead agency for compliance with Section 106 of the National Historic Preservation Act (NHPA). 15 U.S.C. § 717n. FERC and the other cooperating Federal agencies, including the FS and the BLM, together with Tribal governments, executed a single Programmatic Agreement (PA) with the West Virginia and Virginia State Historical Preservation Offices, which reflects the obligations for compliance with the NHPA (FERC 2017b). Under the PA, FERC has responsibility to ensure that the stipulations in the PA are followed and that any required cultural resource treatment plans for sites on NFS lands have been completed. The FS and BLM will continue to fulfill their obligations as directed by the PA (Attachment D).

## 5.7 Government-to-Government Tribal Consultation

Consultations with Native American and Indian Tribes were documented in Section 4.10.5 of the FERC FEIS. Between issuance of the FERC FEIS and execution of PA (FERC 2017d) to address effects to National Register-eligible properties, FERC received a letter from Eastern Band of Cherokee Indians in North Carolina (dated October 31, 2017) that supported the treatment plan for archaeological site 44GS241 and requested to monitor data recovery. Excavations at this site have not occurred to date. The Cherokee Nation of Oklahoma, in a letter to FERC dated October 31, 2017, stated that it does not object to the Project, if Tribal monitors are employed at site 44GS0241 during data recovery excavations. The FS will require the use of Eastern Band of Cherokee Indians and Cherokee Nation of Oklahoma monitors on site 44GS0241.

On October 13, 2022, the FS sent letters notifying the affected tribes of an amended right-of-way application and the FS plans to publish the Notice of Intent for the SEIS. On December 14, 2022, the FS notified the affected tribes of the FS plans to publish the Notice of Availability for the Draft SEIS. These tribes included:

- Absentee-Shawnee Tribe of Indians of Oklahoma
- Cherokee Nation
- Cherokee Nation of Oklahoma
- Eastern Band of Cherokee Indians
- Eastern Shawnee Tribe of Oklahoma

- Monacan Indian Nation
- Nansemond Indian Tribal Association
- Rappahannock Tribe
- United Keetoowah Band of Cherokee Indians in Oklahoma
- Wyandotte Nation
- Wyandotte Nation of Oklahoma

# 6 Notification of ROD and Contact Person

The following steps have been taken to notify the public of this decision:

1. Published the ROD on BLM's ePlanning website;
2. Provided a copy of the ROD to all who requested it.

Contact Person:

Robert Swithers
District Manager
Bureau of Land Management
Southeastern States District Office
273 Market Street
Flowood, MS 39232
601-919-4650

## 7 References


BLM (Bureau of Land Management). 2017a. Record of Decision for the Mountain Valley Pipeline Project, Decision to Grant Rights of Way and Temporary Use Permits. December.

BLM. 2017b. Right of Way Grant and Temporary Use Permit. Case File Numbers: VAES-058143 and WVES-058142. December.

BLM. 2021a. Record of Decision. Mountain Valley Pipeline and Equitrans Expansion Project Decision to Grant Right-of-Way and Temporary Use Permit. January.

BLM. 2021b. Right-of-Way Grant and Temporary Use Permit. Case File Numbers: VAES-058143-02 and VAES-058143-03. January.

Copperhead (Copperhead Environmental Consulting). 2020. Mountain Valley Pipeline Project Supplemental Biological Evaluation for Forest Service Sensitive Species, Mountain Valley Pipeline, Jefferson National Forest, Eastern Divide Ranger District.

Copperhead. 2022. Mountain Valley Pipeline Project Supplemental Biological Evaluation for Forest Service Sensitive Species, Mountain Valley Pipeline, Jefferson National Forest, Eastern Divide Ranger District.

DOI (Department of the Interior). 2020. Standard Form 299 Application for Transportation and Utility Systems and Facilities on Federal Lands completed by Mountain Valley Pipeline, LLC. May.

DOI. 2022. Amended Standard Form 299 Application for Transportation and Utility Systems and Facilities on Federal Lands completed by Mountain Valley Pipeline, LLC. June 3.

FERC (Federal Energy Regulatory Commission). 2013a. Upland Erosion Control, Revegetation, and Maintenance Plan. Washington, D.C. Available from: https://www.ferc.gov/industries/gas/enviro/plan.pdf.

FERC. 2013b. Wetland and Waterbody Construction and Mitigation Procedures. Washington, D.C. Available from: https://www.ferc.gov/industries/gas/enviro/procedures.pdf.

FERC. 2017a. Mountain Valley Project and Equitrans Expansion Project. Final Environmental Impact Statement. June.

FERC. 2017b. Certificate of Public Convenience and Necessity (FERC Docket No. CP16-10-000). October.

FERC. 2017c. Biological Assessment for Mountain Valley Pipeline, LLC, Mountain Valley Pipeline Project. July.

FERC. 2017d. Programmatic Agreement among the Federal Energy Regulatory Commission, U.S. Department of the Interior Bureau of Land Management and National Park Service, U.S. Department of Agriculture Forest Service, U.S Army Corps of Engineers, the State Historic

Preservation Offices for West Virginia and Virginia, and the Advisory Council on Historic Preservation Regarding the Mountain Valley Project. (FERC Docket No. CP16-10-000). December.

FERC. 2020a. Partial Approval of Variance Request No. G-16. November 3.

FERC. 2021. Mountain Valley Pipeline Amendment Project Environmental Assessment. Docket No. CP21-57-000. August 2021.

FERC. 2022. Order Granting Requests for Extension of Time. Mountain Valley Pipeline Project. August.

FS (Forest Service). 2004. Revised Land and Resource Management Plan. USDA Forest Service, Jefferson National Forest, Roanoke, Virginia.

FS. 2017. Record of Decision. Mountain Valley Project Land and Resource Management Plan Amendment for the Jefferson National Forest. December.

FS. 2020. Mountain Valley Project and Equitrans Expansion Project Final Supplemental Environmental Impact Statement. December.

FS. 2021. Record of Decision. Mountain Valley Project Land and Resource Management Plan. January.

FS. 2022. Mountain Valley Project and Equitrans Expansion Project Draft Supplemental Environmental Impact Statement. December.

FS. 2023a. Mountain Valley Project and Equitrans Expansion Project Final Supplemental Environmental Impact Statement. April.

FS. 2023b. Record of Decision. Mountain Valley Project Land and Resource Management Plan. May.

Geosyntec Consultants. 2020a. Hydrologic Analysis of Sedimentation for Streams near Suitable Habitat for Threatened and Endangered Aquatic Species, Virginia and West Virginia. Version 1.2. May 4.

Geosyntec Consultants. 2020b. Hydrologic Analysis of Sedimentation for the Jefferson National Forest, Virginia and West Virginia. May 8.

MVP (Mountain Valley Pipeline). 2017. Biological Evaluation for Forest Service Sensitive Species. June. MVP. 2020. Supplement to the Biological Assessment. April, Revised May 28.

MVP. 2022. Supplement to the Biological Assessment. July 2022. Navajo Refining Co., 149 IBLA (Interior Board of Land Appeals) 014, 21 (1999). https://www.oha.doi.gov/IBLA/Ibladecisions/149IBLA/149IBLA014.pdf

U.S. Court of Appeals. 2018. *Sierra Club, Inc. et al. v. U.S. Forest Service, U.S. Bureau of Land*

*Management, et al.* U.S. Court of Appeals for the Fourth Circuit. 897 F.3d 582 (4th Cir. 2018). Decided July 27.

U.S. Court of Appeals. 2022. *Wild Virginia, et al. v. U.S. Forest Service, U.S. Bureau of Land Management, et al.* U.S. Court of Appeals for the Fourth Circuit. 24 F.4th 915, 920 (4th Cir. 2022). Decided January 25.

U.S Fish and Wildlife Service (USFWS). 2017. Biological Opinion for Mountain Valley Pipeline, LLC, Mountain Valley Pipeline Project. November.

USFWS. 2020. Biological Opinion for Mountain Valley Pipeline Project. September.

USFWS. 2023a. Biological Opinion for Mountain Valley Pipeline Project. February.

USFWS. 2023b. Response Letter to January 26, 2023 Federal Energy Regulatory Commission. February 2023.